United States District Court
Southern District of Texas
**ENTERED**
June 03, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00367 |
| | § | |
| ELIAS  BENHAMOU, M.D., *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION AND ORDER</u>

Plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively, "Allstate" or "Plaintiffs") bring this action against Defendants, Elias Benhamou, M.D. ("Benhamou"), Mobeen Choudhri, M.D. ("Choudhri"), Greater Houston Interventional Pain Associates, PA (f/n/a Elias Benhamou, M.D., P.A.) ("GHIPA"), and Bayou City Pain Consultants, LLC ("BCPC"), (collectively, "BCPC Defendants"), and Steven Sanderson, CRNA ("Defendant Sanderson" or "Sanderson"), (collectively, "Defendants"), for operating a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise in violation of 18 U.S.C. § 1962(c), engaging in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), and for fraud, conspiracy, and unjust enrichment in violation of Texas state law. Pending before the Court are the following motions: BCPC Defendants' Motion to Dismiss (Doc. 11), BCPC Defendants' Motion for a More Definite Statement (Doc. 12), and Defendant Sanderson's Motion to Dismiss and, in the Alternative, Motion for a More Definite Statement (Doc. 13). Having considered the motions, responses, replies,[1] and the applicable law,

---

[1] The Court has also reviewed the following: Plaintiff Allstate's Response to Defendant BCPC's Motion to Dismiss (Doc. 16), Plaintiffs' Response to BCPC Defendants' Motion for a More

the Court finds that Defendants' motions should be granted in part and denied in part.

## I. BACKGROUND

Plaintiffs filed this action against Defendants on February 10, 2015, seeking to recover "sums fraudulently procured by Defendants from Plaintiffs from 2010 through 2013, by means of bodily injury claims based on medical billings for unnecessary and unreasonable examinations and consultations and surgical injection procedures." Doc. 1 at ¶ 1. On the RICO claims, Plaintiffs allege repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, as the predicate acts. *Id.* at ¶ 119. The first count of the complaint alleges mail fraud violations by an association-in-fact enterprise consisting of GHIPA, Benhamou, and Choudhri. *Id.* at 104–111. The second count alleges mail fraud violations by the GHIPA "center enterprise," with Defendants Benhamou, Choudhri, BCPC, and Sanderson as the "enterprise persons." *Id.* at ¶¶ 104–115.  The third count alleges that Defendants conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). *Id.* at ¶¶ 279–280. The fourth, fifth, and sixth counts state claims for common-law fraud, conspiracy, and unjust enrichment. *Id.* at ¶¶ 281–299.

BCPC Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) contending that Allstate failed to adequately plead:

1. Plaintiffs have standing;

---

Definite Statement (Doc. 18), Plaintiffs' Response to Defendant Sanderson's Motion to Dismiss, and in the Alternative, Motion for a More Definite Statement (Doc. 19), BCPC Defendants' Reply to Plaintiffs' Response (Doc. 20), Defendant Sanderson's Reply in Support of Motion to Dismiss (Doc. 21), BCPC Defendants' Reply to Plaintiffs' Response to Motion for a More Definite Statement (Doc. 22), Defendant Sanderson's Reply to Response to Motion to Dismiss (Doc. 23), BCPC Defendants' Supplemental Reply to Response to Motion to Dismiss (Doc. 24), Plaintiffs' Supplemental Brief in Regard to Motions to Dismiss (Doc. 34), BCPC Defendants' Response to Plaintiffs' Supplemental Brief in Regard to Motions to Dismiss (Doc. 35), and Defendant Sanderson's Response to Plaintiffs' Supplemental Brief in Regard to Motions to Dismiss (Doc. 36).

2.  predicate acts that support a "pattern of racketeering activity," and with particularity on the fraud allegations;

3.  the existence of a RICO enterprise or enterprise persons;

4.  a RICO conspiracy claim; and

5.  common-law fraud or conspiracy with particularity and, therefore, also fail to articulate a claim upon which an unjust-enrichment claim can lie.

Doc. 11 at ¶¶ 15–52.

As an alternative to its 12(b)(6) motion, BCPC Defendants filed a motion for a more definite statement. Doc. 12.

Defendant Sanderson also filed a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) and, in the alternative, a motion for a more definite statement. Doc. 13. Defendant Sanderson alleges that Allstate fails adequately to plead:

1.  Plaintiffs have standing;

2.  Sanderson participated in the operation or management of the enterprises;

3.  Sanderson committed a single violation of the mail fraud statute;

4.  Sanderson made any fraudulent misrepresentation;

5.  Sanderson "caused use of the mails to further a fraudulent scheme;"

6.  Sanderson engaged in a pattern of mail fraud or "the predicate acts are related to each other and that they constitute or threaten long-term criminal activity;"

7.  the association-in-fact enterprise had a separate purpose;

8.  the association-in-fact enterprise "is an ongoing organization or that it functions as a continuing unit as shown by a hierarchical or consensual decision-making structure,"

9.  Sanderson knew of and agreed to the overall objective of the "RICO offense;"

10. the alleged fraud caused legal injury; and

11.  common-law fraud or conspiracy with particularity and, therefore, also fail to articulate a claim upon which an unjust-enrichment claim can lie.

*Id.* at pp. 10–16.

Defendants move the Court to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted and 9(b) for failure to plead fraud with particularity. As an alternative to their motions to dismiss, Defendants ask this court to order Plaintiffs to provide a more definite statement of their claims under Fed. R. Civ. P. 12(e). Plaintiffs respond to the pending motions by arguing that the pleadings are sufficient to survive the motions to dismiss and seeking leave to file an amended complaint if this Court disagrees.

## II. LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a claim that "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded facts in the complaint, and must view the allegations as a whole in the light most favorable to the non-movant. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Id.* at 570.

Facial plausibility is satisfied when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 555). Although the plausibility standard "is not akin to a 'probability requirement,' " there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Rule 8(a)(2)). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.*

**B.      Federal Rule of Civil Procedure 9(b)**

When a complaint alleges claims sounding in fraud, Rule 9(b) requires that plaintiffs plead the underlying factual circumstances with particularity. Fed. R. Civ. P. 9(b). Accordingly, Rule 9(b)'s particularity requirement applies to the pleading of mail fraud as a predicate act in a RICO case. *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must plead the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. *Benchmark Elecs. v. J.M. Huber Corp.*, 343

F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs.*, 975 F.2d at 1139). Put simply, plaintiffs must plead the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (internal citation and quotation marks omitted). However, when certain information is peculiarly within defendants' knowledge, the courts are more forgiving in applying Rule 9(b), finding that less detail is required in such cases. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 02-0299, 2002 WL 32107216, at \*11 (S.D. Tex. Aug. 12, 2002) (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Schilk v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974); *The Cadle Co. v. Schultz*, 779 F. Supp. 392 (N.D. Tex. 1991); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1974)).

## III. ANALYSIS

Plaintiffs bring this action for violations of RICO, 18 U.S.C. §§ 1962–1968, common-law fraud, conspiracy, and unjust enrichment. Doc. 1 at ¶¶ 104–115, 279–299. Plaintiffs allege that "Defendants engaged in a scheme to defraud Allstate, through bodily injury claims based on medical billings for unnecessary and unreasonable consultations and surgical injection procedures." *Id.* at ¶ 1; Doc. 19 at ¶ 1.

## A.   RICO CLAIMS

Defendants argue that Plaintiffs' RICO claims should be dismissed because the complaint fails to sufficiently allege: (1) RICO standing; (2) a RICO § 1962(c) claim; and (3) a RICO conspiracy. Doc. 11 at ¶¶ 15–43; Doc. 13 at pp. 7–15.

There are four substantive RICO violations set out in § 1962. 18 U.S.C. § 1962(a)-(d). The elements required to state a claim vary according to the particular RICO claim asserted. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). However, regardless of what section a claim

is brought under, three threshold elements must be met: (1) a *person*[2] who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise. Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (emphasis in original). Assuming that all three of these elements are met, the court may then continue to the substantive requirements of each respective subsection. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

In this case, Plaintiffs allege violations of subsections (c) and (d).[3] Because the contested threshold elements, "pattern of racketeering activity" and "enterprise,"overlap with the substantive elements of subsection (c) and (d) claims, and a subsection (d) claim is dependent on the subsection (c) claim in civil cases, the Court will address those two elements in addressing the § 1962(c) claim.

## 1.     Plaintiffs' Standing

Defendants first argue that Plaintiffs lack standing to bring suit because Plaintiffs' Original Complaint fails to demonstrate that Defendants' "pattern of racketeering activity" was the direct and proximate cause of Allstate's purported injuries. Doc. 13 at pp. 7–9; Doc. 11 at ¶¶ 15–20; Doc. 12 at ¶ 7.

---

[2] A RICO "person" is the defendant. *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). 18 U.S.C. § 1961(3) defines a RICO person as "any individual or entity capable of holding a legal or beneficial interest in property." In this case, no party argues the first element of a RICO claim has not been satisfied.

[3] (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d).

A civil action under RICO may be brought by "[a]ny person injured in his business or property by reason of a violation of" RICO's substantive provisions. *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting 18 U.S.C. § 1964(c)). Thus, a RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by reason of* the conduct constituting the violation. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (emphasis added). To establish that an injury came about "by reason of" a RICO violation, a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but a proximate cause as well." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).

Proximate causation under RICO is evaluated in light of its common-law foundations. *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010). Consequently, the central question a court must ask is whether the alleged violation led directly to a plaintiff's injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Links that are "indirect," "too remote," or "purely contingent" are insufficient. *Hemi*, 559 U.S. at 2 (quoting *Holmes*, 503 U.S. at 271, 274) (internal quotation marks omitted).

In a string of cases, the Supreme Court has made it clear that proximate causation is lacking when the alleged harm is distinct from the alleged RICO violation. *Id.* at 10–11 (citing *Anza*, 547 U.S. at 460–61); *See also Holmes*, 503 U.S. at 271. In the first of these cases, Plaintiff-Respondent Securities Investor Protection Corporation ("SIPC"), alleged that Petitioner-Defendant Robert G. Holmes, Jr. ("Holmes"), was involved in a stock-manipulation scheme that forced the liquidation of two broker-dealers. *Holmes*, 503 U.S. at 261. As a result of the liquidation, the broker-dealers were prevented from meeting obligations and SIPC was forced to advance funds to reimburse the broker-dealers' customers under the Securities Investor

Protection Act of 1970 ("SIPA"). *Id.* Alleging securities, wire, and mail fraud as predicate acts, SIPC brought suit under RICO. *Id.* at 262. The district court entered summary judgment for Holmes, ruling that SIPC did not have standing to assert RICO claims because proximate cause was lacking. *Id.* at 263. The Ninth Circuit disagreed and reversed. *Id.* at 264. The Supreme Court sided with the district court, stating that the link between the stock manipulation (the alleged RICO violation) and the customers' harm (the alleged harm in the case because SIPC's argument was based on subrogation) was too remote because the customers' harm was "purely contingent on the harm suffered by the broker-dealers." *Id.* at 271. Analogizing to the judiciary's general method of analyzing legal damages, the Court stated that a proximate cause analysis under RICO should not "go beyond the first step." *Id.* at 271–72 (internal citation omitted). In doing so, the Court solidified the idea that there must be "some direct relation between the injury asserted and the injurious conduct alleged" in order for a plaintiff to have standing to assert RICO claims. *Id.* at 268.

In the second case in this series, the Court reiterated the direct-injury limitation of RICO standing. Plaintiff-Respondent Ideal Steel Supply Corporation ("Ideal") sued Defendant-Petitioners Joseph and Vincent Anza, the owners of Ideal's principal competitor under RICO. *Anza*, 547 U.S. at 454. Ideal alleged ongoing mail and wire fraud through the submission of fraudulent tax returns, as predicate acts constituting a "pattern of racketeering activity." *Id.* After the district court granted Defendant-Petitioners' 12(b)(6) motion, the Second Circuit vacated the judgment, finding that the plaintiff had adequately pled proximate cause and had standing. *Id.* at 455. The Supreme Court disagreed. *Id.* at 462. Citing *Holmes*, the Court concluded that "the absence of proximate cause is . . . clear" because "the cause of Ideal's asserted harms . . . is a set of actions (offering lower prices) . . . entirely distinct from the alleged RICO violation

(defrauding the State)." *Id.* at 458.

Finally, in *Hemi*, Plaintiff-Respondent New York City, brought suit against Defendant-Petitioner Hemi Group ("Hemi"), alleging that Hemi's failure to file reports required of out-of-state cigarette sellers under the Jenkins Act constituted mail and wire fraud ("racketeering activities" subject to enforcement under RICO) and deprived the city of tax revenue. *Hemi*, 559 U.S. at 4. When the case reached the Supreme Court, the Court cited its prior *Anza* and *Holmes* decisions in ruling that proximate cause was lacking, stating that "the focus [in the RICO context] is on the directness of the relationship between the conduct and harm." *Id.* at 12. The Court concluded the city's causal theory was far too attenuated because the alleged fraud was selling cigarettes to city residents and failing to submit the required customer information to the state, while the alleged injury was the city's inability to collect back taxes due on those sales. *Id.* at 9–11.

In this case, the court need not "go beyond the first step." *See Holmes*, 503 U.S. at 271–72 (internal citation omitted). Unlike *Anza*, *Holmes*, and *Hemi*, where "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud," *Hemi*, 559 U.S. at 11, the alleged harm and alleged RICO violation in this case are directly connected. *See* Doc. 1 at ¶¶ 111, 114, 118–273. Allstate's alleged harm is the overpayment of at least 51 claims based on fraudulent bills and reports, and the alleged fraud is Defendants' submissions of fraudulent bills and reports, which Allstate then paid by settlement checks sent via U.S. mail. *Id.* Thus, rather than being an indirect or incidental party to the fraud, Allstate was the object of it. *See Allstate Ins. Co. v. Plambeck*, No. 14-10574, 2015 WL 5472433, at *7 (5th Cir. Sept. 17, 2015) (concluding proximate cause was satisfied in a similar case because "[t]he objective of the enterprise was to collect from insurance companies; . . . Allstate's paying up was not just

incidental but was the object of the collaboration.").

In an attempt to deflect focus from the directness of the relationship between the alleged harm and alleged fraud, BCPC Defendants cite *Allstate Insurance Co. v. Rehab Alliance of Texas, Inc.*, No. 14-13-00459-CV, 2015 WL 1843249, at *6 (Tex. App.—Houston [14th Dist.], Apr. 21, 2015, pet. denied), for the proposition that Allstate must "attribute" or "quantify" its damage in order to sufficiently plead standing. Doc. 20 at ¶ 6. However, that case is inapposite. Rather than addressing RICO standing at all, much less at the motion to dismiss stage, the appeals court in *Rehab Alliance* affirmed the district court's grant of a no-evidence motion for summary judgment, concluding that Allstate failed to marshal sufficient evidence to support the injury element of its common-law fraud claim. *Rehab Alliance*, 2015 WL 1843249, at *8. Importantly, "[t]he evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss." *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991). As even the *Rehab* court acknowledged, "[t]he Court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Id.* at *7 (quoting *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 269–270 (D. Conn. 2004)).[4]

---

[4] BCPC Defendants make much of the outcome in *Rehab Alliance*. *See* Doc. 39. The Court has thoroughly reviewed both Defendants' Supplemental Brief in Regard to Their Motion to Dismiss (Doc. 39) and Plaintiff's Response to Defendants' Supplemental Brief (Doc. 40) and remains unpersuaded the *Rehab Alliance* holding is applicable in this case. A court's analysis of the sufficiency of pleadings does not depend on the sufficiency of the evidence. *See Allen v. City of Galveston*, CIV A G-06-467, 2007 WL 996628, at *3 (S.D. Tex. Mar. 30, 2007) ("A Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims."). *See also Paskauskiene v. Univ. of N. Texas Health Science Ctr.*, CIV A 405-CV-501-Y, 2006 WL 3372854, at *2 (N.D. Tex. Nov. 20, 2006) ("[T]his Court is to assess the legal feasibility of the complaint and may not examine the weight of the evidence that might be offered in support of the claims.") (citing *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003)). *Rehab Alliance* case is also distinguishable on the facts. Unlike the case at bar, Allstate's theory

Defendants also argue that Plaintiffs' failure to take into account other factors such as the decisions of third parties makes Plaintiffs' claims too speculative to support standing. Doc. 20 at ¶ 2–6, Doc. 21 at pp. 11–14. Defendant Sanderson cites *Little v. KPMG, LLP*, 575 F.3d 533 (5th Cir. 2009), for this proposition. Doc. 21 at pp. 12–13. Defendants again miss the mark with this line of reasoning. First, *KPMG* addresses Article III, not statutory, standing.[5] Second, in that case, the court of appeals affirmed the district court's dismissal of the case under Rule 12(b)(1) because a group of defendant-accounting firm's competitors depended on a three-step chain of speculative causation to connect their alleged injury to defendant's actions. *Id.* at 540. There is no such speculative causal chain in this case.

It is axiomatic that Plaintiffs must satisfy both statutory and constitutional standing requirements to proceed with their case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) (stating that statutory and Article III standing are analyzed separately). *See also Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North America, Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, at *2 (W.D. La. Aug. 22, 2013) (citing *DeMauro v. De Mauro*, 115 F.3d 94, 96 (1st Cir. 1997) (stating that although a claim of injury to business or property, as is required for a civil RICO damages action, is sometimes described as a "standing" issue, even when there is plainly a case or controversy under Article III, the statutory precondition of injury to business or property must also be met)). On a motion to dismiss, however, courts presume that general allegations embrace the specific facts that are necessary to support a claim of constitutional

---

of injury in *Rehab Alliance* was "not tied to any specific claim or claims that form[ed] the basis of the suit." 2015 WL 1843249, at *6.

[5] Defendant Sanderson appears to conflate Article III and statutory standing. Sanderson's initial motion to dismiss (Doc. 13) only cites RICO statutory standing cases. It is not until his reply (Doc. 21) that the *KPMG* case and Article III's requirement that claims not be "too conjectural or hypothetical" are raised.

standing. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990).  Moreover, unlike the Article III standing cases that *KPMG* follows and relies on, Allstate's injury is not based on an attenuated, speculative causal chain. Nor are third-party actions, the effects of which are unknown, at issue in this case. The complaint alleges that Allstate has suffered a direct and concrete injury (overpayment of claims to the tune of $414,773.79). This injury has a direct causal connection to Defendants' actions that satisfies both constitutional and RICO proximate causation standards (as discussed above). The harm is "directly attributable to the improper and fraudulent . . . billing[s]." Doc. 1 at ¶¶ 121–273. Regardless of any third party's actions, Allstate's harm would not have occurred if Defendants had not submitted fraudulent "records, reports, billings, and other documents . . . substantiating the unnecessary and inflated services." *See id.* As to the final element of constitutional standing, a favorable decision in this case will address Plaintiffs' injury, by awarding treble damages.

Assuming the truth of the allegations set forth in the complaint (as it must at this stage), the Court concludes that Allstate has alleged sufficient facts directly connecting the alleged fraud to the alleged harm. As a result, Plaintiffs' complaint survives a 12(b)(6) motion for failure to state a claim on the issue of statutory standing. The Court also notes that Plaintiffs satisfy Article III standing.

## 2.    Section 1962(c) Claims

With regard to the § 1962(c) claim, Defendants argue that Plaintiffs fail to (1) sufficiently allege predicate acts; (2) plead fraud with particularity; (3) plead facts demonstrating Defendants caused use of the mails to further a fraudulent scheme; (4) plead acts showing Defendants engaged in a pattern of such acts; and (5) sufficiently allege the existence of an association-in-fact enterprise or enterprise persons. Doc. 11 at ¶¶ 22–41; Doc. 13 at pp. 10–14.

A violation of § 1962(c) requires (1) conduct or participation (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, 473 U.S. at 496. A plaintiff must allege each of these elements in order to state a claim. *Id.* The Court will address Defendants' arguments as they relate to each of these elements.

### a. Enterprise Status

Defendants argue that Plaintiffs' RICO claims fail as a matter of law because Plaintiffs have not pled facts showing the existence of a RICO enterprise. Doc 11 at ¶¶ 34–41; Doc. 13 at pp. 13–14; Doc. 20 at ¶¶ 21–24.  Count one of Plaintiffs' complaint alleges a violation of 18 U.S.C. § 1962(c) by an association-in-fact enterprise consisting of GHIPA, Benhamou, and Choudhri. Doc. 1 at ¶¶ 104–111. Count two alleges a violation of the same subsection by an entity enterprise consisting of GHIPA (known as the "Center Enterprise") with BCPC, Benhamou, Choudhri, and Sanderson as "enterprise persons." *Id.* at ¶¶ 112–115. Defendants challenge the sufficiency of Plaintiffs' allegations of a RICO enterprise, arguing that Allstate fails to plead the required distinction between the "enterprise" and "enterprise persons." Doc. 11 at ¶¶ 34–41; Doc. 20 at ¶¶ 21–24. Defendants also argue that the complaint fails to establish the purported association-in-fact enterprise because Allstate does not plead facts that the purported association existed for purposes other than to commit the predicate acts, is an ongoing organization, or functions as a continuing unit as shown by a hierarchical or consensual decision-making structure. Doc. 11 at ¶¶ 34–37; Doc. 13 at pp. 13–14.

### 1) *Distinction Between the "Enterprise" and "Enterprise Persons" Is Sufficiently Alleged*

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt." *Boyle v. United States*, 556 U.S. 938, 943–45 (2009) (quoting 18 U.S.C. § 1962(c)) (internal quotation marks omitted). Thus, to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, No. 4:09-CV-2556, 2011 WL 5325785, at *7 (S.D. Tex. Nov. 3, 2011), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)) (internal quotation marks omitted). However, although a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise. *St. Paul*, 224 F.3d at 447 (internal citation and quotation omitted).

In order to avoid dismissal for failure to state a RICO claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise. *Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (citing *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423 (5th Cir. 1987)). RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Plambeck*, 2015 WL 5472433, at *3 (quoting 18 U.S.C. § 1961(4)) (internal quotation marks omitted). Accordingly, a RICO enterprise can be either a legal entity or an association-in-fact. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995).

BCPC Defendants argue that Allstate fails to meet its burden to plead the required distinction between the alleged enterprise and alleged enterprise persons. Doc. 20 at ¶ 21–24. In Count one of the complaint, Plaintiffs allege that GHIPA, Benhamou, and Choudhri are an association-in-fact enterprise with each person "fulfilling a specific role to carry out and facilitate its purpose." Doc. 1 at ¶ 104.

Despite the somewhat confusing hair splitting that has occurred in this area of RICO case law over the last decade,[6] this type of overlap between alleged enterprise persons and an association-in-fact enterprise is recognized. *See St. Paul*, 224 F.3d at 447 ("Although a defendant may not be both a person and an enterprise, a defendant may be both a person and a part of an enterprise.") (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir.1989); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("A corporate entity may be held liable . . . where it associates with others to form an enterprise that is sufficiently distinct from itself. In this regard we have noted that a section 1962(c) claim may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise and that a defendant may be a "RICO 'person' and one of a number of members of the RICO 'enterprise,' "); *Allstate Ins. Co. v. Valley Physical Med. & Rehab. P.C.*, No. 05-5934, 2009 WL 3245388, at *6 (E.D.N.Y. 2009) (finding sufficient pleading of an association-in-fact enterprise which was composed of corporate entities and their principals where both the corporate entities and their principals were also alleged as individual RICO persons).

In *St. Paul*, the Fifth Circuit distinguished its earlier holdings in *Burzynski* and *Crowe*, stating that although the identified defendants—the RICO persons—were essentially the alleged

---

[6] *Compare Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (holding that a corporate employee who is alleged to be a RICO enterprise person is sufficiently distinct from corporation as enterprise), *and Cedric Kushner,* 533 U.S. at 164 (holding that owners of corporations who are alleged RICO enterprise persons are sufficiently distinct from the corporation as the enterprise), *with Foufas*, 867 F.2d at 881 (holding that a company named as both a RICO enterprise person and the enterprise is impermissible), *and N. Cypress*, 2011 WL 5325785, at *7 (holding that a parent company alleged to be the RICO person is not sufficiently distinct from the subsidiary as the alleged enterprise), *and ISystems v. Spark Networks, Ltd.*, 428 Fed. App'x 368, 373 (5th Cir. 2011), *reh'g granted, opinion withdrawn* (Aug. 12, 2011), *opinion after grant of reh'g*, No. 10-10905, 2012 WL 3101672 (5th Cir. Mar. 21, 2012), *judgment entered*, No. 10-10905, 2012 WL 3115964 (5th Cir. Mar. 21, 2012) (holding that a parent company alleged to be the RICO person is not sufficiently distinct from the wholly owned subsidiary as the enterprise).

16 / 47

association-in-fact, "[a] collective entity is something more than the members of which it is

comprised." 224 F.3d at 447 (internal citation and quotation marks omitted). The court reasoned

that to find otherwise would permit an individual member of a collective enterprise, such as an

association-in-fact, to escape prosecution for violating § 1962(c) because he would not be

considered distinct from the enterprise. *Id.* In explaining the rationale for recognizing the

difference, the court explicitly acknowledged the use of the pleading method employed in this

case:

> To get around having a corporation named as both a RICO defendant and a RICO
> enterprise, *many plaintiffs have charged the corporation as being part of an
> association-in-fact enterprise and also as a RICO defendant*. Courts have roundly
> criticized this formulation. In some ways, that formulation parallels the situation
> where individuals are named as defendants and as being part of an association-in-
> fact, and accordingly, the criticism has fed the notion that no defendant can be a
> part of the association-in-fact enterprise or it would violate the person/enterprise
> distinction. But the criticism pertaining to having corporations listed as being a
> part of the association-in-fact is due to the fact that a § 1962(c) enterprise must be
> more than an association of individuals or entities conducting the normal affairs
> of a defendant corporation. The criticism is generally unwarranted where
> corporations are not involved.

224 F.3d at 434 n. 16 (internal citations omitted) (emphasis added). The court went on to explain

further:

> [W]hen *Bishop*, the decision to which the *Burzynski* court cited for support, held
> that to state a § 1962(c) claim, a plaintiff had to distinguish between the RICO
> person and the RICO enterprise, *it was not making the sweeping generalization
> that any congruence between a RICO person and a member of an association-in-
> fact, which constituted a RICO enterprise, violated the person/enterprise
> distinction*. Instead, *Bishop* merely concurred with the vast majority of the circuits
> that held that a § 1962(c) claim requires a distinction between the RICO person
> and the RICO enterprise. Those circuits were discussing the person/enterprise
> distinction where the plaintiffs were alleging a corporate entity as both a RICO
> defendant and a RICO enterprise. *Bishop* itself involved a plaintiff who sought a §
> 1962(c) claim against a *single corporate defendant, which was also named as the
> RICO enterprise*. The reason for differentiating in the § 1962(c) context between
> cases where a  corporation is identified as both the enterprise and the defendant
> and cases where it is not was aptly noted in the *Haroco* decision, to which *Bishop*
> heavily deferred.

*Id.* at 446-47 (internal citations omitted) (emphasis added). When one reads the *Haroco* decision, the matter becomes even clearer:

> [A] corporation and an association in fact differ substantially with respect to the "person" element. Where persons associate "in fact" for criminal purposes, each person may be held liable under RICO for his, her or its participation in conducting the affairs of the association in fact through a pattern of racketeering activity. But the nebulous association in fact does not itself fall within the RICO definition of "person." We doubt that an "association in fact" can, as such, hold any interest in property or even be brought into court. *In the association in fact situation, each participant in the enterprise may be a "person" liable under RICO*, but the association itself cannot be.

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 401 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985) (emphasis added).

In this case, the association-in-fact consists of GHIPA, Benhamou, and Choudhri, all three of whom have been named as defendants in this case, but as the *Haroco* case, a ruling upon which this circuit's precedent rests, makes clear, an association-in-fact is not a "person" for RICO purposes. Thus, the association-in-fact of GHIPA, Benhamou, and Choudhri is not a person, and is therefore distinct from GHIPA, Benhamou, and Choudhri as "persons."

Moreover, notwithstanding the required enterprise-person distinction in the corporate context, a corporate entity may be held liable where it associates with others to form an enterprise that is sufficiently distinct from itself. *St. Paul*, 224 F.3d at 447. The key inquiry under this test focuses on whether the § 1962(c) enterprise is "more than an association of individuals or entities conducting the *normal affairs* of a defendant corporation." *Id.* at 434 n. 16. Here, Plaintiffs allege that the normal affairs of the GHIPA entity include provision of pain management services. *See* Doc. 1 at ¶¶ 17–51. The association-in-fact enterprise consisting of GHIPA, Benhamou, and Choudhri, however, is alleged to be conducting activities beyond normal affairs, specifically by conducting unnecessary procedures and charging inflated rates in

automobile accident cases covered by letters of protection. *See id.* at ¶¶ 52–102. Accordingly, this Court finds that the distinctiveness requirement has been met with regard to the alleged association-in-fact enterprise in count one of Plaintiffs' complaint.

Count two of the complaint alleges that GHIPA, a legal entity, is the enterprise. GHIPA is not also alleged to be an enterprise person, only BCPC, Benhamou, Choudhri, and Sanderson are. Because the enterprise and enterprise persons are distinct, this pleading is sufficient.

### 2)   *Separate Purpose Is Pled*

Regardless of whether an enterprise is alleged to be a legal entity or an association-in-fact, the enterprise must be an entity separate and apart from the pattern of activity in which it engages. *Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989). Thus, a plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts. *Foufas*, 867 F.2d at 881. Although proof of one does not necessarily establish the other, "evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.' " *Boyle*, 556 U.S. at 947 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). As the Supreme Court has recognized, "the existence of an association-in-fact [enterprise] is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Id.* at 951.

Defendants argue that Allstate fails to plead specific facts plausibly establishing that the purported association exists for purposes other than to commit the predicate acts. Doc. 11 at ¶ 35; Doc. 13 at p. 13. Both defendants cite to *Donovan* and *Giventer* in support. Those cases are not controlling. Defendants' reliance on *Giventer* is misplaced because that case concerns claims against a chiropractic clinic/law office combination that did not provide services to *any* legitimate patients. *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 650 (N.D. Tex. 2002). Although the *Donovan* case more closely aligns with the facts of this case, it too, is

distinguishable. Because the *Donovan* court found that the allegations contained in the complaint were "not capable of establishing that the enterprise treats other, legitimate, patients, i.e., patients whose claims are not fraudulently inflated," it concluded the allegations were not capable of establishing that the association-in-fact enterprise had an existence separate and apart from the pattern of racketeering activity. *Allstate Ins. Co. v. Donovan*, No. 12-0432, 2012 WL 2577546, at *13 (S.D. Tex. July 3, 2012).

In contrast to *Giventer* and *Donovan*, however, Plaintiffs' complaint contains multiple allegations that are capable of establishing that the enterprise provided services to a number of legitimate patients and began doing so before the alleged fraud even began. *See, e.g.*, Doc. 1 at ¶¶ 46, 50, 51. Such allegations illustrate that the purported association exists for purposes other than to commit the predicate acts. *See Allstate Ins. Co. v. Michael Kent Plambeck, D.C.*, No. 3:08-CV-388-M, 2014 WL 1303000, at *3 (N.D. Tex. Mar. 31, 2014), *aff'd sub nom. Allstate Ins. Co. v. Plambeck*, 2015 WL 5472433 ("Plaintiffs also presented sufficient evidence that the enterprise had an existence separate and apart from the alleged racketeering activity, e.g., that the enterprise solicited and provided treatment and representation to patients who actually required such treatment."); *Crowe*, 43 F.3d at 205 (concluding that the farming venture alleged existed separate and apart from the pattern of racketeering because the participants' association extended beyond the alleged acts of fraud and theft). For example, in paragraph 46, Allstate alleges that Benhamou testified in state court that of the two GHIPA offices, only Houston had "a big attorney practice." Doc. 1 at ¶ 46. The complaint goes on to state that in addition to the automobile cases at issue in the alleged fraud, GHIPA, Benhamou, and Choudhri treat Medicare patients. *Id.* at ¶ 50. The complaint gives exact dollar figures of the amounts billed to Medicare for the year 2012 and alleges that the "highest charged Medicare service in 2012 was for

neurostimulation implants"—a procedure that is not performed in automobile accident cases. *Id.* at ¶¶ 50, 51. The Court finds that these allegations are capable of establishing that the association-in-fact enterprise had a purpose serving legitimate patients that was separate from the alleged pattern of racketeering activity.

### 3) *Legal Entity Enterprise Is Sufficiently Alleged*

Count two of Plaintiffs' complaint alleges that GHIPA is an "enterprise" as defined in 18 U.S.C. 1961(4).[7] *Id.* at ¶ 112. Plaintiffs refer to this enterprise as "the Center Enterprise."

"A legal entity [enterprise] is one that 'has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations.' " *Bonner v. Henderson*, 147 F.3d 457, 459 (5th Cir. 1998) (quoting Black's Law Dictionary (6th ed. 1990)). *See also United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981) (stating that "legal entity" as used in RICO enterprise definition contemplates inclusion of legal associations such as corporations and partnerships). Accordingly, "proof simply of the 'legal' existence of the corporation, partnership, or other legal form of organization charged" is presumably sufficient to prove existence of a legal entity enterprise. *Griffin*, 660 F.2d at 999.

Plaintiffs have alleged that GHIPA is a professional association organized under the laws of Texas. Doc. 1 at ¶ 13. This allegation satisfies the statutory definition of an enterprise. *See* 18 U.S.C. § 1961(4). *See also Donovan*, 2012 WL 2577546 at *10 (concluding that Texas limited partnership is a legal entity for enterprise status). Accordingly, GHIPA has sufficiently alleged the existence of an entity enterprise.[8]

### 4) *Association-in-Fact Enterprise Is Sufficiently Alleged*

---

[7] " '[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; . . ." 18 U.S.C. § 1961(4).

[8] Plaintiffs must also plead a distinction between the enterprise and enterprise persons, as addressed in PART III.2.a.1.

Defendants next argue that Plaintiffs do "not plead specific facts showing that the proposed association-in-fact enterprise is an ongoing organization or that it functions as a continuing unit as shown by a hierarchical or consensual decision-making structure." Doc. 11 at ¶ 37; Doc. 13 at p. 13.

When the alleged enterprise is an association-in-fact enterprise, the plaintiff must show evidence of: (1) an existence separate and apart from the pattern of racketeering;[9] (2) ongoing organization; and (3) members that function as a continuing unit as shown by a hierarchical or consensual, decision-making structure. *Delta Truck*, 855 F.2d at 243. *See also Boyle*, 556 U.S. at 946 (recognizing that "an association-in-fact enterprise must have at least three structural features: purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose"). In other words, a plaintiff must explain the functioning of alleged enterprises to satisfy the pleading standard for the enterprise element. *Old Time*, 862 F.2d at 1218.

### a.   *Ongoing Organization Is Sufficiently Pled*

"Continuity or the ongoing nature of an association in fact is the linchpin of enterprise status." *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991) (quoting *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 749 (5th Cir. 1989) (internal quotation marks omitted). To qualify as an enterprise, there must be "continuity of . . . structure and personnel, which links the defendants, and a common or shared purpose." *Id.* (citing *Shaffer v. Williams*, 794 F.2d 1030, 1032–33 (5th Cir. 1986)). The ongoing-organization element of enterprise status simply requires "longevity sufficient to permit . . . associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

Allstate's complaint states that the association-in-fact and center enterprises have been

---

[9] Addressed above in PART III.2.a.2.

engaged in the alleged fraud since at least 2010. Doc. 1 at ¶¶ 1, 104, 121–273 279, 282, 289. This allegation is sufficient to satisfy the ongoing-organization element of pleading an association-in-fact enterprise. *See, e.g.*, *Crowe*, 43 F.3d at 205 (concluding that ongoing-organization status was adequately pled because the association-in-fact enterprise lasted for almost four years and "might have gone on indefinitely.").

### b.   *Hierarchical or Consensual Decision-Making Structure Is Sufficiently Pled*

Defendants particularly take issue with the adequacy of Plaintiffs' allegations regarding the structure of the association-in-fact enterprise. Defendants claim that "Allstate's description of each Defendant's separate business affairs does not show the existence of an ascertainable structure of an ongoing organization and, particularly any decision-making structure." Doc. 11 at ¶ 37; Doc. 13 at p. 14.

RICO does not require that an enterprise be a separate business-like entity. *Michael Kent Plambeck*, 2014 WL 1303000, at *3 (citing *Boyle*, 556 U.S. at 945). An association-in-fact enterprise is simply a continuing unit that functions with a common purpose and course of conduct. *Boyle*, 556 U.S. at 950.  Although each member of the enterprise must also share this common purpose, *Michael Kent Plambeck*, 2014 WL 1303000, at *3, the enterprise concept is broad. *Boyle*, 556 U.S. at 949. An association need not have a "hierarchical structure," a "chain of command," or any formalized procedures. *Id.* at 948. Decisions may be made on an ad hoc basis and members need not have fixed roles. *Id.* Thus, alleging that association-in-fact members actively associate with one another and work cooperatively and illegally to achieve a goal is sufficient to establish plausible enterprise status. *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 692 (S.D. Tex. 2009).  Interdependent and coordinated associations that exist to perpetuate the enterprise and its profitability likewise satisfy the common-purpose structural element. *Michael Kent Plambeck*, 2014 WL 1303000, at *3. *See also United States v. Elliot*, 571 F.2d

880, 898 (5th Cir. 1978) (noting that a shared "desire to make money" is sufficient to satisfy RICO's common-purpose requirement).

Two cases in particular illustrate the breadth of the enterprise concept within this circuit. In *Crowe*, the Fifth Circuit concluded that the structural element of enterprise status was adequately pled because the members of the alleged association-in-fact enterprise were equal partners and met on a regular basis to make decisions concerning the operation. 43 F.3d at 205. In another more recent case, the court found that allegations that a defendant "was part of a unit, that even absent any decision-making structure, worked cooperatively and illegally to achieve [the enterprise's] goal" was sufficient to survive a 12(b)(6) motion. *Adhikari*, 697 F. Supp. 2d at 692.

Benhamou and Choudhri are allegedly equal partners of GHIPA and BCPC and make shared decisions on a regular basis, just as the defendants in *Crowe*. Doc. 1 at ¶¶ 33, 37, 40, 41, 48, 59, 62, 63, 94, 100.  As in *Adhikari*, Plaintiffs in this case allege that the association-in-fact members actively associated with one another and worked cooperatively and illegally to achieve the goal of defrauding Plaintiffs. *Id.* at ¶ 108. Both allegations are sufficient to establish plausible enterprise status under this circuit's precedent.

Defendants cite *Gonzalez v. Bank of America* in support of their arguments and for the proposition that "each party's conducting of its own affairs is not hierarchical or consensual decision making or an ongoing organization." Doc. 11 at ¶ 37; Doc. 13 at p. 14 (quoting *Gonzalez*, No. 09-2946, 2011 U.S. Dist. LEXIS 16963, at *20 (S.D. Tex. Feb. 20, 2011)) (internal quotation marks omitted). However, that case is distinguishable. What Defendants fail to recognize is that the relationships among the members of the alleged association-in-fact in *Gonzalez* were entirely distinct from the relationships at issue in this case. There, the association-

in-fact enterprise was composed of Bank of America and several other *independent companies separately engaged in different aspects* of the insurance industry. Their only ties to one another were in contractual relationships regarding the process of selling and providing insurance. Thus, in finding that the plaintiff had failed to allege sufficient facts to satisfy enterprise status, the independent operational status of the defendants was key:

> Gonzalez does not have a single fact showing that the defendants operate . . . as a continuing unit with a hierarchical or consensual decision-making structure. At best, some of the defendants had separate roles in the selling of insurance, but each party's conducting of its own affairs is not hierarchical or consensual decision making or an ongoing organization. Nothing suggests the defendants participated in a hierarchy beyond their contractual relationships—if the defendant had a role at all.

*Gonzalez*, 2011 U.S. Dist. LEXIS 16963, at *20–21.

*Donovan* is similarly distinguishable. In *Donovan*, several independent businesses were members of an alleged association-in-fact enterprise engaged in "interenterprise referrals" in an effort to convert "otherwise 'soft-tissue' bodily injury claims into major medical claims." *Donovan*, 2012 WL 2577546, at *2, 14. The court held that "[m]erely pleading that there are several businesses and individuals that sometimes work with each other" and "identif[ying] and describ[ing] the specific roles that each defendant plays in providing healthcare services to their injured patients and *running their respective businesses*" was insufficient to establish enterprise status. *Id.* at *14 (emphasis added).  The court went on to note that the complaint lacked "factual allegations capable of establishing how the alleged scheme was formed, who, if anyone, was in charge, how each of the defendants participated in the alleged scheme other than providing independent services, or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud." *Id.* at *14.

In contrast to both *Gonzalez* and *Donovan*, the alleged association-in-fact before this

Court deals with only one business entity and two individuals. Importantly, the business entity is wholly owned and controlled by the two individuals. Doc. 1 at ¶ 33. Even were it to include BCPC and Sanderson, however, the analysis would not change. BCPC was also wholly owned by Choudhri and Benhamou. *Id.* at ¶ 37. Sanderson was employed there. *Id.* at ¶ 41. Therefore, Choudhri and Benhamou operated all of the pieces—regardless of whether BCPC and GHIPA can technically be termed "separate" businesses. Thus, unlike the members of the alleged associations-in-fact who ran their respective businesses independently of one another in *Gonzalez* and *Donovan*, GHIPA, BCPC, Choudhri, Benhamou, and Sanderson are each parts of a dependent business structure. Moreover, the complaint contains factual allegations establishing how the alleged scheme was formed, who was in charge, and how each of the defendants participated in the alleged scheme. *Id.* at ¶¶ 16–101, 108. Consequently, this Court finds that the structural element of enterprise status has been adequately pled.

### b.  Participation or Management

In order to determine what the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" in 18 U.S.C. § 1962(c) means, the Supreme Court first examined the meaning of the terms "conduct" and "participate." *Reves v. Ernst & Young*, 507 U.S. 170, 177–79 (1993). The Court concluded that "conduct," both as a noun and as a verb in the subsection, requires some level of direction while the word "participate" requires some part in that direction. *Id.* at 178–79.  Accordingly, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179. Although some part in directing the enterprise's affairs is required for liability, the Court likewise explained that the use of the words "participate" and "directly or indirectly" indicate that RICO liability is not limited to those with primary responsibility for the enterprise's affairs or a formal position in the enterprise. Id. Thus, lower rung participants in the enterprise who are under the direction of upper management as well as those "associated with" the enterprise who exert control over it can be liable. *Id.* at 184.

Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement. *Plambeck*, 2015 WL 5472433, at *4 (acknowledging that defendants had limited roles but nevertheless finding they "participated in managing the enterprise with their supervisory roles in their respective parts of the scheme."). Thus, simply providing goods or services that ultimately benefit the enterprise will not subject one to liability. *In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 489 (E.D. La. 2001), *aff'd sub nom. In re MasterCard Intern. Inc.*, 313 F.3d 257 (5th Cir. 2002) (quoting *Amsterdam Tobacco, Inc. v. Philip Morris, Inc.*, 107 F. Supp. 2d 210 (S.D.N.Y. 2000)) (internal quotation marks omitted). Nor will merely having a business relationship with a RICO enterprise, *Compass Bank v. Villarreal*, No. 10-8, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011) (collecting cases), or simply contributing to the enterprise "with the knowledge of or willful disregard" for the other defendants' supposed criminal activity. *Gonzalez*, 2011 U.S. Dist. LEXIS 16963, at *21. Even the receipt of funds or materials on its own, without more, will not establish that a defendant actually operated the scheme to obtain those funds or materials. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012).

### 1) *Sanderson's Participation or Management Is Not Sufficiently Alleged*

Defendant Sanderson alleges that Plaintiffs have failed to plead facts establishing that Sanderson participated in the operation or management of the enterprise or association-in-fact enterprise as required by the statute. Doc. 13 at p. 10. Plaintiffs respond that Sanderson has ignored the portions of the complaint that allege Sanderson's anesthesia services were a "substantial part of the scheme." Doc. 19 at ¶ 41.

In this case, the complaint alleges that Stephen Sanderson was a nurse anesthetist employed by Bayou City Pain, an entity wholly owned by Benhamou and Choudhri. Doc. 1 at ¶¶ 37, 41. The complaint goes on to allege that in his capacity as a BCPC anesthetist, Sanderson worked under the supervision of the GHIPA physician (either Benhamou or Choudhri) and

performed anesthesia services, including administering "unnecessary general anesthesia." *Id.* at

¶¶ 79, 93, 108e, 113d. From these sparse allegations it appears Sanderson had limited

involvement in the entity's affairs. While such limited involvement does not preclude a finding

that Sanderson "conducted or participated" in the enterprise, Plaintiffs' claims that Sanderson

was employed by BCPC, worked at the direction of Choudhri and Benhamou, and administered

unnecessary general anesthesia are insufficient to show that Sanderson had any supervisory role

in the scheme. This is true regardless of whether the services he rendered for BCPC were "a

substantial part of the scheme." Doc. 19 at ¶ 41. Accordingly, the RICO claims against

Sanderson are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim for which

relief may be granted.

### 2) *BCPC Defendants' Participation or Management Is Sufficiently Alleged*

BCPC Defendants likewise argue that Allstate has not pled their participation or

management in the supposed association-in-fact or "center" enterprise with any factual

sufficiency. Doc. 11 at ¶¶ 38–41.

As already discussed, and as BCPC Defendants correctly note, neither the provision of

goods or services, the mere existence of a business relationship, simple contributions with

knowledge of the scheme, nor the receipt of funds or materials from the scheme is sufficient to

subject one to RICO liability. *In re MasterCard*, 132 F. Supp. 2d at 489; *Compass Bank*, 2011

WL 1740270, at *13; *Gonzalez* 2011 U.S. Dist. LEXIS 16963, at *21; *Davis-Lynch*, 667 F.3d at

551. Unlike the factual allegations against Sanderson and those in the cases that BCPC

Defendants cite in their defense, however, the complaint alleges that Benhamou, Choudhri,

GHIPA, and BCPC did not merely provide services to, conduct a business relationship with,

make simple contributions to, or merely receive funds and materials from the enterprise. Rather,

the complaint alleges that Benhamou and Choudhri were the masterminds of the scheme to

defraud Allstate and that GHIPA and BCPC were the tools by which they accomplished the fraud. *See, e.g.*, Doc. 1 at ¶ 33 ("Choudhri and Benhamou are the only persons who have ever had an ownership interest in GHIPA, . . ."); ¶ 37 ("Benhamou and Choudhri are the only persons to have had an ownership interest in [BCPC]."); ¶ 40 ("Bayou City Pain only provides services to the two GHIPA offices."); ¶ 43 ("Bayou City has no independent, defined office space."); ¶ 79 ("The nurse anesthetist is under the supervision of the GHIPA physician conducting the procedure."); ¶ 93 ("Dr. Benhamou has claimed in state court deposition testimony that GHIPA may bill these additional charges, because the services were provided by Bayou City Pain, which is an 'independent' company, and he does not supervise the nurse anesthetist. . . . However, Dr. Benhamou and Dr. Choudhri are the sole owners of Bayou City Pain; Bayou City Pain performs services only for GHIPA; Bayous City Pain has no office of its own, or even defined office space within GHIPA; GHIPA bills for the anesthesia services within its own itemize billing; there is no separate bill issued by Bayou City Pain. . . ."); ¶ 49 ("In a November 2013 state court deposition, Benhamou testified the seven GHIPA providers *. . . each* see about 25 patients a day.") (emphasis in original); ¶ 59 ("GHIPA represented these initial examinations were comprehensive examinations of the highest complexity, almost always through the use of the CPT code 99245."); ¶ 60 ("A 99245 coding represents the examination was for a presenting problem of moderate to high severity, and the examination . . . typically involv[ed] 80 minutes spent by the physician with the patient or the family."); ¶ 90 ("The itemized billing concludes with separate cha[r]ges for the following services, with no code generally ascribed to them: "Operating room," "Recovery room," and "Anesthesia.""); ¶ 80 ("Once the procedure was completed, the patient is moved to what Defendants characterize as the 'recovery room.' The GHIPA recovery room was simply another area of the 'operating room,' separated from the area where injection procedures

are performed by a curtain."). In contrast to the allegations against Sanderson, these factual allegations against BCPC Defendants are sufficient to establish their "participation in the operation or management of the enterprise itself." *See Reves*, 507 U.S. at 179.

### c. Pattern of Racketeering Activity

Defendants argue that Plaintiffs do not plead that Defendants have "committed a single violation of the federal mail fraud statue, much less the two required for RICO." Doc. 11 at ¶ 22; Doc. 13 at p. 10. Defendants also argue that because the alleged predicate acts are violations of the federal mail fraud statute, Plaintiffs pleadings are subject to, but fail to satisfy, the heightened pleading requirement of Rule 9(b). Doc. 11 at ¶ 22; Doc. 13 at p. 10.

"Pattern of racketeering activity" is a defined term and has two components.[10] *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); 18 U.S.C. § 1961(5). First, there must be at least two predicate acts of "racketeering activity." *Burzynski*, 989 F.2d at 742. Second, there must be a pattern of such acts. *Id.*

### 1) *Predicate Acts of Mail Fraud Are Not Sufficiently Alleged with Regard to Defendant Sanderson, but Are Sufficiently Alleged with Regard to BCPC Defendants*

"Racketeering activity," is defined by reference to various state and federal offenses.[11] *Foufas*, 867 F.2d at 880; 18 U.S.C. § 1961(1). One of the enumerated crimes is mail fraud. *See* 18 U.S.C. § 1961(1)(B) (defining any act indictable under 18 U.S.C. § 1341—the mail fraud statute—as "racketeering activity"). Section 1341 "applies to anyone who knowingly causes to

---

[10] " 'Pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity; . . ." 18 U.S.C. § 1961(5).

[11] " 'racketeering activity' means . . . (B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . ." 18 U.S.C. § 1961(1).

be delivered by mail anything for the purpose of executing any scheme or artifice to defraud." *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009) (internal citations and quotation marks omitted). The elements of RICO mail fraud are: (1) a scheme to defraud by means of false or fraudulent representation; (2) interstate or intrastate use of the mails to execute the scheme; (3) the use of the mails by the defendant connected with or incident to the scheme; and (4) actual injury to the plaintiff. *Landry*, 901 F.2d at 428. Although reliance is not an element of statutory mail or wire fraud, the Fifth Circuit does require its showing when mail or wire fraud is alleged as a RICO predicate act. *In re MasterCard Intern.*, 313 F.3d at 263. Moreover, because Rule 9(b)'s particularity requirement applies to the pleading of mail fraud as a predicate act in a RICO case, *Landry*, 901 F.2d at 430, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

In this case it is the first and third elements of mail fraud, existence of a scheme to defraud and use of the mails incident to the scheme, that Defendants allege the Plaintiffs have failed to plead with particularity. Doc. 11 at ¶¶ 29–31; Doc. 13 at p. 12; Doc. 20 at ¶¶ 16–19; Doc. 21 at pp. 9–10. Importantly to the case at bar, the elements of the offense of mail fraud do not require that the scheme contemplate the use of the mails as an essential element. *Pereira v. United States*, 347 U.S. 1, 8 (1954). The mail fraud statute requires only that the mailing caused by the defendant's actions be "incident to an essential part of the scheme." *United States v. Ingles*, 445 F.3d 830, 835 (5th Cir. 2006) (internal citations and quotation marks omitted).

### a. *Scheme to Defraud Is Not Sufficiently Alleged with Regard to Defendant Sanderson but Is Sufficiently Alleged with Regard to BCPC Defendants*

In addition to requiring that the complaint state the "who, what, when, where, and how" of the fraud, the Fifth Circuit recognizes "a specific-intent requirement that the defendant knew

the scheme involved false representations, or put otherwise, that a culpable defendant acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *United States v. Plato*, 593 Fed. App'x 364, 369 (5th Cir. 2015) (internal citation and quotation marks omitted). "Although intent can be averred generally under Rule 9(b), a RICO mail fraud averment must nonetheless provide some factual basis for conclusory allegations of intent, which must, in turn, give rise to a strong inference of fraudulent intent." *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (quoting *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988), *aff'd*, 911 F.2d 1105 (5th Cir. 1990)) (internal citation and quotation marks omitted).

Underpinning the heightened pleading requirement for fraud claims is the federal courts' determination that "defendants are not required to guess what statements were made in connection with [a plaintiff's claims] and how and why they are fraudulent." *Gonzalez*, 2011 U.S. Dist. LEXIS 16963, at *17. Defendant Sanderson correctly points out that this requirement exists so that each defendant is informed "of the nature of his alleged participation in the fraud." Doc. 21 at p. 8 (quoting *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)) (internal quotation marks omitted). Building on this argument, Sanderson cites a number of cases for the proposition that "Plaintiffs cannot lump all the defendants together and satisfy the pleading requirements . . . they must identify specific actions of specific individuals at specific times that would constitute fraud." Doc. 21 at p. 8 (quoting *U.S. v. Dizney*, 295 F. App'x 717, 722 (5th Cir. 2008)) (internal quotation marks omitted).

Applying this principle, several district courts in this circuit have found plaintiffs' RICO complaints inadequate when each defendant's conduct is not specified. *See, e.g.*, *Gonzalez*, 2011 U.S. Dist. LEXIS 16963, at *17–18 ("[i]t gives no clue as to what each defendant's role was and

how it participated."); *Donovan*, 2012 WL 2577546, at \*5 ("The factual allegations underlying the plaintiffs' allegations of predicate acts of mail fraud . . . are vague and non-specific."). However, identifying circumstances that indicate conscious behavior on the part of the defendant will support an inference of fraud and satisfy Rule 9(b). *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *Lucas v. Ocwen Home Loan Servicing*, No. 3:13-CV-1057-G, 2013 U.S. Dist. LEXIS 176938, at \*47 (N.D. Tex. Nov. 5, 2013). *See also Bonton*, 889 F. Supp. at 1004 (stating that there must be some factual basis which gives rise to a strong inference of fraudulent intent) (internal citation omitted).

The complaint in this case only mentions Sanderson in three factual allegations, stating that he worked for BCPC as a nurse anesthetist in the Houston office, "performed anesthesia services for surgical injection procedures conducted at GHIPA, including unnecessary general anesthesia," was employed "as justification for the billing of anesthesia charges," and in this capacity, along with BCPC Defendants, "established, financed, owned, operated, and/or participated in the management of the Bayou City Pain anesthesia service." Doc. 1 at ¶¶ 41, 108, 113. Although there are detailed factual allegations regarding the overall scheme elsewhere within the complaint, there are no further allegations of Sanderson's role in the alleged fraud. Without factual allegations detailing Sanderson's role and indicating conscious behavior on his part (i.e., the what, when, where, and how of his participation), the Court finds the pleadings insufficient to support Plaintiffs' RICO claim against Sanderson.

In contrast, the Court finds that the factual allegations against BCPC Defendants do meet the standards of Rule 9(b). An examination of a Fifth Circuit case that BCPC Defendants cite for support confirms this. In *Tel-Phonic Services*, the court stated:

> Plaintiffs have stated one claim of mail fraud, in their allegation that TBS wrote
> an April 27, 1983, letter "with false representations inducing plaintiffs to change

the agreement to allow TBS to sell two new systems to the Bell subsidiary falsely representing that TBS would buy back two systems from plaintiff." TBS had allegedly previously agreed that Plaintiffs could sell their two TBS systems to the Bell subsidiary, and, through this false representation, TBS secured the profitable sale for itself. We find this allegation of fraud sufficient to withstand Rule 9(b).

975 F.2d at 1139.

In this case, Plaintiffs have stated 80 claims of mail fraud in their allegations that "records, reports, billings, and other documents . . . substantiating unnecessary and inflated services," were forwarded to Allstate, who, in reliance on these materials, then paid for these services for 51 patients. Doc. 1 at ¶¶ 121–273. Plaintiffs alleged that the packages for these automobile accident patients (1) included records that used CPT codes 99245 and 99215 even though testimony indicates BCPC Defendants could not have serviced patients at this level; (2) billed for unnecessary anesthesia use; (3) assessed separate charges for operating and recovery room charges even though the room used was the same; and (4) charged separate anesthesia fees for an "independent provider" even though BCPC was wholly owned and controlled by BCPC Defendants. *See, e.g.*, *id.* at ¶¶ 37, 49, 50, 51, 59, 79, 82, 90. "[Whether] these factual allegations [are] sufficient to conclusively prove the elements . . . is irrelevant; what is significant to the Court at this stage is that they make the predicate acts alleged by Plaintiff plausible." *See Adhikari*, 697 F. Supp. 2d at 693 (finding that predicate acts necessary for a RICO claim were sufficiently alleged because the predicate crimes involved the common elements of coercion, deception, and force and all of these elements were averred in the complaint). In the words of the *Dorsey* court, these factual allegations "indicate conscious behavior on the part of the [D]efendant[s]," thereby "supporting an inference of fraud." 540 F.3d at 339.

   **b.  *Incident to the Scheme Is Sufficiently Alleged with Regard to BCPC Defendants*[12]**

---

[12] Since the incident-to-the-scheme sub-element is dependent on whether predicate acts have been alleged and the Court has determined that such acts have not been alleged with particularity

To show that a mailing is "incident to an essential part of the scheme," the government must demonstrate that completion of the alleged scheme "depend[ed] in some way on the information or documents that passed through the mail." *United States v. Tencer*, 107 F.3d 1120, 1125 (5th Cir. 1997). Thus, to violate the statute a defendant need not have used the mails himself or actually intended that the mail be used. *Ingles*, 445 F.3d at 835; *United States v. Massey*, 827 F.2d 995, 1002 (5th Cir. 1987). It is sufficient if he caused it to be done. *Pereira*, 347 U.S. at 8. "[O]ne 'causes' the mails to be used where he does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *United States v. Maze*, 414 U.S. 395, 399 (1974) (internal citations and quotation marks omitted); *Massey*, 827 F.2d at 1002 ("[t]he test to determine whether a defendant caused the mails to be used is whether the use was reasonably foreseeable."). "Each separate use of the mails to further a scheme to defraud is a separate offense." *United States v. McClelland*, 868 F.2d 704, 706 (5th Cir. 1989).

*McClelland* is instructive in determining whether a particular mailing is "incident to the scheme to defraud." In that case, an insured restaurant owner devised a scheme to defraud his insurance company by causing the destruction of his restaurant. 868 F.2d at 706. After the incident, McClelland mailed a number of letters to the insurance company as part of the claims process. *Id.* at 707–08. These letters formed the basis of his conviction for mail fraud. *Id.* In affirming his conviction on appeal, the court stated that "[t]he requisite statutory purpose exists if the alleged scheme's completion could be found to have been *dependent in some way* upon the information and documents passed through the mails." *Id.* at 707 (quoting *United States v. Kent*,

---

for Defendant Sanderson, it is not necessary to discuss whether the scheme was dependent on Sanderson's involvement.

608 F.2d 542, 546 (5th Cir. 1979)) (emphasis added). The court then determined that the success of McClelland's scheme depended on each letter that was mailed because "[n]o one who makes a claim on a fire policy could reasonably expect an insurer to make a payment without [supporting] documentation [being sent in the mail]." *Id.* at 708.

BCPC Defendants cite to *Donovan* for support of their argument that Plaintiffs fail to plead use of the mail in furtherance of a scheme to defraud. Doc. 11 at ¶¶ 30–31; Doc. 20 at ¶¶ 16–19. In *Donovan*, the court found that "Plaintiffs neither alleged that completion of the scheme depended upon [the alleged mailings], nor . . . alleged facts showing how or why the mailings furthered the scheme." *Donovan*, 2012 WL 2577546, at *6. However, in that case, the original complaint did not list specific instances of alleged mail fraud or amounts paid in reliance on the allegedly false presentations of records. *See* Pls.' Original Compl., *Allstate Ins. Co. v. Donovan*, (No. 4:12-cv-00432).

In contrast to *Donovan*, the complaint at issue in this case lists the following acts of alleged mail fraud: the mailing of 29 demand packages, which included the records and billings BCPC Defendants supplied, and the mailing of 51 settlement payments by Allstate. [13] Doc. 1 at ¶¶ 121–273. Moreover, each one of these separate acts of fraud is linked to a specific patient identified by initials and states: (1) that the patient was covered under a letter of protection and received unnecessary surgical injection procedures; (2) what documents Defendants supplied to support payment for these procedures that were then included in the demand packages; (3) the total amounts of the settlement payments; (4) the amount "directly attributable to the improper

---

[13] The Court notes that Plaintiffs alleged that U.S. Mail was used to send demand packages for only 29 of the 51 patients (Numbers 3, 4, 6, 8, 9, 11, 14, 15, 16, 17, 21, 22, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 47, and 48) while demand packages for the remaining patients were sent via facsimile. The complaint, however, does allege that all 51 patients' settlement checks were sent via U.S. Mail.

and fraudulent billing;" and (5) the dates the settlement checks were mailed. *Id.* The Court finds

that these allegations are sufficient to meet the *McClelland* standard that the success of

defendants' scheme depended "in some way" on each mailing: no medical provider who makes a

claim for payments pursuant to a settlement agreement "could reasonably expect an insurer to

make a payment without [supporting] documentation [being sent in the mail]."[14] *See* 868 F.2d at

707–08.

### 2) *Pattern Is Sufficiently Alleged with Regard to BCPC Defendants* [15]

Assuming that predicate acts exist, a plaintiff must still show that the defendant engaged

in a "pattern" of such acts, which requires the plaintiff to plead both that the predicate acts are

related to each other and that they either constitute or threaten long-term criminal activity.

*Burzynski*, 989 F.2d at 742 (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239

(1989)). Put simply, the acts must both have continuity and be related. *Id.* Although proof of

continuity and relationship may often overlap, the two inquiries analytically are distinct prongs

of the pattern element requiring separate analysis. *Heller Fin., Inc. v. Grammco Computer Sales,*

*Inc.*, 71 F.3d 518, 524 (5th Cir. 1996).

### a. *Continuity*

In order to show "continuity," a plaintiff must be able to plead that the predicate acts

amount to or threaten continuing racketeering activity. *Burzynski*, 989 F.2d at 742. Accordingly,

it is well established that where alleged RICO predicate acts are part and parcel of a single,

otherwise lawful transaction, the continuity necessary to establish a "pattern of racketeering

---

[14] It is also worth noting that after the *Donovan* plaintiffs amended their complaint to include allegations similar to those at issue in this case (i.e., patient initials, dates of the predicate acts of mail fraud, etc.), the court denied the defendants' subsequent motions to dismiss. *See* Hearing Minutes and Order (Doc. 61), *Allstate Ins. Co. v. Donovan*, (No. 4:12-cv-00432).

[15] Since the pattern sub-element is dependent on whether predicate acts have been alleged and the Court has determined that such acts have not been alleged with particularity for Defendant Sanderson, it is not necessary to discuss whether a pattern was sufficiently alleged in his case.

activity" has not been shown. *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996); *Burzynski*, 989 F.2d at 743. Factors that a court considers in determining whether continuity exists are length of scheme, including the threat of it continuing indefinitely; number of separate transactions, participants, or victims; and geographic scope. *Singh*, 480 F.3d at 356.

Here, the complaint does not allege acts that are "part and parcel of a single, lawful transaction." *See Word of Faith*, 90 F.3d at 123. It instead alleges that the scheme began as early as 2010 and encompassed at least 51 individual settlement claims. Doc. 1 at ¶¶ 107, 121–273. Moreover, "there is no reason to suppose that this systematic victimization allegedly begun in [2010] would not have continued indefinitely had the Plaintiffs not filed this lawsuit." *See Singh*, 480 F.3d at 356. Consequently, the Court finds that Plaintiffs have sufficiently pled "a continuity of racketeering activity, or its threat." *See id.*

### b. *Relatedness*

The relatedness inquiry focuses on the interrelationship of charged RICO predicates in order to ensure that a person is not "subjected to sanctions for committing two widely separated and isolated criminal offenses." *Heller Fin.*, 71 F.3d at 524 (internal citations and quotation marks omitted). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 (internal citation and quotation marks omitted).

In this case, Plaintiffs have alleged two types of mailing predicates, mailing of demand packages, including the records and billings Defendants supplied, and the mailing of payments by Allstate. Doc. 1 at ¶¶ 121–273. Although the complaint makes clear that the demand packages were not always sent via US mail, it does specifically allege that each of the 51 individual

patients' settlement checks was sent via US mail, and the dates on which the checks were postmarked. *Id.* Moreover, although the patients varied, the complaint alleges that the purpose of each predicate act was the same (to obtain funds in personal injury settlements), the result was the same (obtaining funds from each settlement check), the participants were the same (Choudhri, Benhamou, GHIPA, BCPC), the victim was the same (Allstate), the method of commission was the same (forwarding records, reports, billings, and other documents that substantiated unnecessary charges to law firms which then sent these items in a demand package to Allstate), and the incidents are not isolated (Allstate sent checks for amounts attributable to improper and fraudulent billing 51 times from 2010 to 2014). *Id.* The Court finds these allegations are sufficient to show relatedness.

### 3.    RICO Conspiracy

In order to demonstrate a RICO conspiracy under § 1962(d), a plaintiff must demonstrate that (1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (internal citation and quotation marks omitted). In the RICO criminal context, a person need not commit or agree to commit predicate acts to be held liable. *Salinas v. United States*, 522 U.S. 52, 63–64. However, to establish civil liability for RICO conspiracy, a claimant must allege injury from an act that is independently wrongful under RICO. *Beck v. Prupis*, 529 U.S. 494, 507 (2000). Thus, when a plaintiff fails properly to allege a violation of § 1962(c), his § 1962(d) claim is without basis. *Bonton*, 889 F. Supp. at 1005; *Donovan*, 2012 WL 2577546, at *15; *N. Cypress*, 2011 WL 5325785, at *15.

In this case, Plaintiffs allege that "Defendants willfully combined, conspired, and agreed with one another and with others" to commit the predicate acts. Doc. 1 at ¶ 279. As discussed

above, Plaintiffs have failed to allege facts capable of establishing that Defendant Sanderson engaged in a pattern of racketeering activity or conducted or participated in the operation or management of an enterprise. Because Plaintiffs' § 1962(c) claims against Sanderson fail as a result, their § 1962(d) claims fail as a matter of law.  However, several factual allegations in the complaint support the Court's conclusion that conspiracy has been adequately alleged among Benhamou, Choudhri, GHIPA, and BCPC. The complaint alleges that GHIPA and BCPC are wholly owned by Benhamou and Choudhri, GHIPA controls BCPC's records, and unnecessary charges by these individuals and entities for comprehensive examinations, "operating room," "recovery room," and anesthesia charges were sent to attorneys for forwarding to and payment by Allstate. *Id.* at ¶¶ 33, 37, 42, 88–94, 99. The complaint also alleges that Benhamou and Choudhri hired and trained Nurse Andries to be predisposed to make findings that would further their scheme, and BCPC (their entity) hired Sanderson so that BCPC appeared to be "independent" and the billing of separate anesthesia charges could be justified. *Id.* at ¶¶ 27–32, 41, 79, 93, 108, 113. Finally, the complaint alleges that BCPC Defendants withheld certain documentation in order to increase their recovery. *Id.* at ¶ 100. Importantly, the complaint alleges that the scheme depended on all of these decisions. *Id.* at ¶¶ 44–120. Because BCPC Defendants actively coordinated and participated in the above actions, the court finds that these allegations are specific enough to state a claim that BCPC Defendants conspired to violate § 1962(d). *See Adhikari*, 697 F. Supp. 2d at 693–94 ("Plaintiffs allege that in subcontracting with Daoud, KBR willfully entered into an agreement with another party to benefit from and to further the goal of procuring cheap labor and increasing profits. Plaintiffs point out that the predicate acts alleged in their briefs required recruitment, transportation, retention, and supervision. Plaintiffs further allege KBR's knowledge of the recruiting and transporting, and their active participation in the

retention and supervision. These allegations sufficiently allege a violation under 18 U.S.C. Section 1962(d).").

**B.      COMMON-LAW CLAIMS**

Defendant Sanderson asserts that because Plaintiffs' RICO claims fail, the court should decline to exercise supplemental jurisdiction over Plaintiffs' common-law claims. Doc. 13 at p. 15. Defendants also argue that Plaintiffs' common-law claims should be dismissed because the complaint fails sufficiently to allege common-law fraud or conspiracy with the particularity required of Rule 9(b). Doc. 11 at ¶¶ 44–48; Doc. 13 at pp. 15–16. Finally, claiming that unjust enrichment is "not an independent cause of action" in Texas and the common-law fraud claims are insufficient to meet the heightened pleading requirements of Rule 9(b), Defendants contend that Plaintiffs' unjust-enrichment claim should also be dismissed. Doc. 11 at ¶¶ 48–52; Doc. 13 at p. 16.

**1.      Common-Law Fraud**

Because Plaintiffs' common-law claims are based on the same facts alleged in support of their RICO claims, Defendants renew their arguments that Plaintiffs fail to plead with the particularity required by Rule 9(b), and therefore the complaint does not state a claim for common-law fraud. Doc. 11 at ¶¶ 44–46; Doc. 13 at 15–16; Doc. 20 at ¶ 27.

The elements of a fraud claim in Texas are: (1) the speaker made a material representation; (2) the representation was false; (3) when the speaker made the representation he knew it was false or he made it recklessly without any knowledge of its truth or falsity; (4) the speaker's intention was that the other party should act upon the representation; (5) the other party acted in reliance upon the representation; and (6) the other party was injured. *Tilton v. Marshall*, 925 S.W.2d 672, 684 (Tex. 1996) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d

218, 222 (Tex. 1992)). Moreover, the plaintiff "must plead and prove on the merits that he was ignorant of the falsity of the defendant's representations and in fact relied on same." *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 406 (5th Cir. 2007) (internal citation and quotation marks omitted). However, reliance by the plaintiff need not be reasonable. *Id.* at n. 13 (citing *Martin v. MBank El Paso, N.A.*, 947 F.2d 1278, 1280 (5th Cir. 1991)). As a type of fraud claim, "Federal Rule of Civil Procedure 9(b) applies to state-law fraud claims." *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 762 F. Supp. 2d 942, 958 (S.D. Tex. 2010) (citing *Sullivan v. Leor*, 600 F.3d 542, 550–51 (5th Cir. 2010)).

As discussed in III.2.c. above, Plaintiffs have identified the speaker, time, place, and content of fraudulent misrepresentations. They have also alleged their reliance on these misrepresentations. Moreover, the complaint sufficiently alleges the elements of common-law fraud: that the representations (the billings and records submitted to Allstate) were material and false, BCPC Defendants were aware of the documents' falsity but intended that Allstate would act on the misrepresentations by sending settlement checks covering the fraudulent billings, and that Allstate was injured (overpayment). The Court finds that the complaint satisfies the pleading requirements for common-law fraud with regard to BCPC Defendants. With regard to Defendant Sanderson, however, the complaint fails to allege common-law fraud for the same reasons that the complaint fails to sufficiently allege RICO mail fraud. The common-law fraud claims against Sanderson are therefore subject to dismissal.

## 2.    Common-Law Conspiracy

Defendants next challenge the sufficiency of Plaintiffs' allegations of civil conspiracy, arguing that because Plaintiffs fail to allege common-law fraud, their allegations of conspiracy fail. Doc. 11 at ¶¶ 47–48; Doc. 13 at p. 16; Doc. 20 at ¶¶ 28–29.

Civil conspiracy is generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Tilton*, 925 S.W.2d at 681. Conspiracy is a derivative tort, requiring the plaintiff to plead and prove the substantive tort. *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). The Texas courts have held that a civil "conspiracy to defraud" requires "a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each . . . and that each has the understanding that the other has that purpose." *Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988) (quoting *Schlumberger Well Survey Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968)) (internal quotation marks omitted). Mere proof that a defendant had some collateral involvement in a transaction, and had good reason to believe that there existed a conspiracy among other parties to it, is insufficient to establish that the defendant was a conspirator. *Id.* Because conspiracies "are rarely evidenced by specific agreements, the determination of whether a conspiracy existed almost inevitably rests on the inferences that may fairly be drawn from the behavior of the alleged conspirators." *Mack v. Newton*, 737 F.2d 1343, 1351 (5th Cir. 1984) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)) (internal quotation marks omitted). Nevertheless "vital facts may not be proved by unreasonable inferences from other facts and circumstances" or "by piling inference upon inference." *Zervas*, 861 F.2d at 836 (internal citation and quotation marks omitted). Importantly, the pleading standards of Rule 9(b) also apply to pleading a state-law claim of conspiracy to commit fraud. *Donovan*, 2012 WL 2577546, at *17; *Petri v. Kestrel Oil & Gas Properties, L.P.*, No. 09-3994, 2011 WL 2181316, at *3 (S.D. Tex. June 3, 2011) (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) ("a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the

conspiracy' ") (quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008))).

As discussed at length above in III.B.1., Plaintiffs have pled the elements of common-law fraud with regard to BCPC Defendants, but not for Defendant Sanderson. Plaintiffs have also alleged common purpose to defraud by BCPC Defendants. Accordingly, the common-law conspiracy claims are only subject to dismissal for failure to state a claim against Defendant Sanderson.

### 3.    Common-Law Unjust Enrichment

Defendants argue that Plaintiffs' unjust-enrichment claims are subject to dismissal because Plaintiffs fail to allege facts capable of establishing their fraud claim. Doc. 11 at ¶ ¶ 49–52; Doc. 13 at p. 16; Doc. 20 at ¶ 30.

Unjust enrichment is an equitable theory that allows a party to recover when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied). Thus, recovery under unjust enrichment is characterized as an equitable right and is not dependent on the existence of a wrong. *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).

Plaintiffs' claims for unjust enrichment are based on the same allegations as the RICO and common-law fraud and conspiracy claims. Because the Court has already concluded that the complaint adequately states a claim for relief against BCPC Defendants for RICO and common-

law fraud, the Court finds that there are sufficient facts capable of establishing that Defendants were unjustly enriched by committing fraudulent acts. *Contra Donovan*, 2012 WL 2577546, at *19. In contrast, the allegations against Defendant Sanderson are severely inadequate. As the Court has already discussed, the allegations do not suffice to allege fraud by Sanderson. Although an unjust-enrichment claim does not need to be predicated on a wrong such as fraud or duress, the allegations against Sanderson are so sparse that there are no facts capable of establishing that he "wrongfully secure[d] a benefit" or "passively receive[d] one which would be unconscionable to retain" as required for an unjust-enrichment claim. *See Villarreal*, 136 S.W.3d at 270. Accordingly, the claims for unjust enrichment against Sanderson are subject to dismissal for failure to state a claim for which relief can be granted.

**C.     Defendants' Motion for More Definite Statement and Plaintiffs' Request to File an Amended Complaint**

If dismissal of Plaintiffs' claims is not granted, Defendants request that the Court order Plaintiffs to provide a more definite statement. Doc. 12 at ¶ 20; Doc. 13 at p. 16. Plaintiffs likewise seek leave to file an amended complaint if the Court finds the complaint insufficient. Doc. 16 at ¶ 65; Doc. 19 at ¶ 61.

A party may amend its pleading once as a matter of course within twenty-one days of serving it or twenty-one days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a). In all other cases, a party may only amend its pleadings with the written consent of the opposing party or with the court's leave. Fed. R. Civ. P. 15(a)(2). The Federal Rules provide that "leave [to amend the complaint] shall be freely given when justice so requires." *Id.* "[T]he language of this rule 'evinces a bias in favor of granting leave to amend.' " *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines,* 283 F.3d 282, 286 (5th Cir. 2002)). "[G]ranting leave to amend is

especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted). Unless it is clear that a complaint's defects are incurable or the plaintiffs advise the court that that they are unwilling or unable to amend in a manner that will avoid dismissal, the court should generally afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case. *Id.* Although amendments should be liberally allowed, leave to amend is by no means automatic. *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994). The decision to grant or deny leave is ultimately one left to the sound discretion of the district court. *Id.* The district court may consider a variety of factors in determining whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

The Court concludes that Plaintiffs' claims for RICO mail fraud, RICO conspiracy, common-law fraud, common-law conspiracy, and unjust enrichment against Defendant Sanderson should be dismissed. However, because Rule 15(a) creates a liberal standard for granting leave and doing so will satisfy Sanderson's request for a more definite statement, the Court will grant Plaintiffs leave to amend.

## IV.    Conclusion

For the reasons explained above, it is hereby

**ORDERED** that

BCPC Defendants' Motion to Dismiss (Doc. 11) is **DENIED;**

BCPC Defendants' Motion for a More Definite Statement (Doc. 12) is **DENIED AS MOOT;**

Defendant Sanderson's Motion to Dismiss (Doc. 13) is **DENIED** and his Motion for a More Definite Statement is (Doc. 13) **GRANTED**. Plaintiffs shall file within 20 days a supplement to their complaint as to the claims against Sanderson in an effort to cure the identified deficiencies. Defendants shall file a timely responsive pleading.

SIGNED at Houston, Texas, this 2nd day of June, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE